# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1791

_____

June Ford,                                    *
                                              *
                 Appellant,                   *
                                              *    Appeal from the United States
         v.                                   *    District Court for the Eastern
                                              *    District of Arkansas.
Michael J. Astrue, Commissioner,              *
Social Security Administration,               *
                                              *
                 Appellee.                    *

_____

Submitted:  December 14, 2007
Filed:  March 13, 2008

_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

This social security case has a lengthy procedural history. When June Ford applied for social security disability benefits, an administrative law judge denied her claim following a hearing and the Appeals Council denied review. While Ms. Ford's subsequent appeal was pending in federal district court, the parties agreed to a remand to the Social Security Administration to obtain vocational expert testimony. After a hearing on remand, an ALJ denied her claim based on the entire record, including the evidence adduced at both hearings. When the Appeals Council denied review, the second ALJ's decision became the final decision of the Social Security

Commissioner.[1] *See Scott v. Chater*, 112 F.3d 367, 367 (8th Cir. 1997). The district court upheld the Commissioner's decision and Ms. Ford appealed. We reverse the judgment and remand the case to the district court with directions to remand it to the Social Security Administration for further consideration.

We review the district court's decision *de novo* to determine whether the Commissioner's denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000).

As one prerequisite to obtaining benefits, a claimant must show that he or she has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ determined that Ms. Ford's degenerative disc disease and muscle spasms were severe impairments as that term is used in the regulations. He also concluded that her depression and carpal-tunnel-syndrome symptoms were non-severe impairments. After determining that Ms. Ford's impairments did not meet any of social security's list of circumstances under which disability is presumed, *see* 20 C.F.R. § 404.1520(a)(4)(iii), the ALJ was required to determine her residual functional capacity (RFC), *i.e.*, the most that she was capable of doing despite the combined effects of both her severe and non-severe medically determinable impairments, 20 C.F.R. § 404.1545(a); *see Casey v. Astrue*, 503 F.3d 687, 691 n.3 (8th Cir. 2007). In making this determination, the ALJ had to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(3).

When determining Ms. Ford's RFC, the ALJ was required to consider her own description of her pain and limitations. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). Ms. Ford contended that she is significantly disabled by severe

---

[1]Michael J. Astrue, has been appointed to serve as Commissioner of the Social Security Administration and is substituted as appellee pursuant to Fed. R. App. P. 43(c)(2).

muscle spasms and pain in her back that prevent her from walking or standing and from which she sometimes does not recover for days. Ms. Ford had worked as a bank teller for thirteen years, and she reported on a social security form that she had continued to work despite having back pain until she began to have immobilizing spasms in her back. On another form, she reported that she sometimes went several weeks without having a severe attack, that she had daily back pain, and that she never knew when a severe spasm would occur. She testified that because the attacks often came without warning, she was unable to give an employer notice so that a replacement would be available.

There is not much medical evidence in the record that corroborates the specifics of Ms. Ford's account, but there is evidence from Ms. Ford, administrative personnel, and examining and consulting doctors that indicates that she took prescription pain medication (Ultram) and a muscle relaxer (Soma) during the relevant period. She also provided written statements from witnesses regarding her condition: Her son-in-law wrote that in the last ten to fifteen years, she had "extremely bad problems with her back." When it "flares up," he said, "she is almost completely immobilized and on several occasions I have had to physically move her from one place to another. During these incidents she appears to be in severe pain and I believe there is no possible way that she would be able to work under these circumstances." According to her sister, Ms. Ford's pain became severe over time and began to prevent her from moving.

Ms. Ford also stated that she had shoulder and neck pain, as well as pain in her hands, wrists, and arms that had been diagnosed as carpal tunnel syndrome, and that she suffered from thyroid disease and depression. She acknowledged that her thyroid disease was correctable with medication. She indicated that she had been taking a prescription antidepressant (Prozac) since her first husband died in a car accident eight years earlier and that her depression worsened when her pain increased.

-3-

The ALJ did not fully credit Ms. Ford's complaints of pain and she challenges this determination as her sole issue on appeal. Our frequently-cited opinion in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), is thus central to the case. Under *Polaski*, an ALJ cannot simply reject complaints of pain because they were not supported by objective medical evidence. Instead, the ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record, as well as observations of the claimant by others (including treating and examining doctors) as to such matters as her daily activities; the intensity, duration, and frequency of her pain and the conditions causing and aggravating the pain; and her functional limitations. *Id.* The ALJ had to consider these matters, but did not have to discuss each one of them in relation to Ms. Ford, and he was permitted to discount her complaints if they were "inconsistent with the evidence as a whole." *Casey*, 503 F.3d at 695. When he discounted her complaints, however, the ALJ was required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003).

Here the ALJ gave reasons for his credibility determination, and there is substantial evidence in the record tending to support the ALJ's ultimate credibility finding. First, although not a clear discrepancy, we think that the ALJ was entitled to give some weight to evidence that Ms. Ford quit her bank job voluntarily – and not because of any impairment – shortly before her husband was transferred to another location, and that she did not apply for another job after moving because she said that she "knew" that an employer would not keep her once her debilitating muscle spasms began. The ALJ also relied on Ms. Ford's statement that she sometimes went for months without having a severe muscle spasm, and he refers to medical reports for his conclusion that her subjective complaints were not supported by the medical records. Though the ALJ may not rely solely on the lack of objective medical evidence, such evidence is one "factor" that he may consider, *Polaski*, 739 F.2d at 1322, and medical records include more than objective findings. As the ALJ noted, Dr. Rommel Childress, who examined Ms. Ford in April, 2001, found that she had a normal gait

and a normal range of motion in all areas. In addition, the ALJ relied on another examining doctor, Dr. Edwin Simonton, an orthopedic surgeon, who said that Ms. Ford had only light limitations in her lumbar and cervical spine and no muscle spasms, and that she had no orthopedic impairment.

But we agree with Ms. Ford that some of the statements that the ALJ relied on to show that the accounts that she gave of her difficulties were inconsistent do not, in fact, contradict each other. For example, although Ms. Ford testified that she did things in the house that required her to get up and walk around, we do not believe that she contradicted herself when she then spoke of getting up only to go to the car: When read in context, the latter statement addresses something different by saying that she walked around in her yard only when going from the house to the car. We also believe that the ALJ erred in concluding that Ms. Ford's description of her daily activities worked against her. She consistently reported being able to do such things as washing a few dishes, ironing one or two pieces of clothing, making three or four meals each week, and reading, and we do not think that these activities are inconsistent with her complaints of pain or with her contention that she is unable to hold a full time job. *Cf. Leckenby v. Astrue*, 487 F.3d 626, 634-35 (8th Cir. 2007).

With respect to the ALJ's reliance on medical records, moreover, we question his statement that Dr. Scott Hall, an examining physician, found that Ms. Ford had "only minimal limitations in some range of motion testing." We cannot tell what areas of the body the ALJ is referring to, and he fails to mention that Dr. Hall reported, *inter alia*, that Ms. Ford's range of motion was significantly limited in her hips and wrists, findings that supported her assertions that she had difficulty in bending and straightening and in using her hands.

After careful consideration of the record in this case, we cannot say that it weighs so heavily against Ms. Ford's credibility that the ALJ would necessarily have disbelieved her absent the erroneous inferences that he drew from the record. We

therefore conclude that the better course is to allow the ALJ to reconsider Ms. Ford's application based on a proper consideration of the evidence. Accordingly, we reverse and remand the case to the district court for remand to the Social Security Administration for reconsideration of Ms. Ford's application. *Cf. Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007); *Batson v. Commissioner*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

_____