# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2838
_____

Renee Louise Toland

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 17, 2014
Filed: August 5, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Renee Toland filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, respectively. The Social Security Administration Commissioner (Commissioner) denied her applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) found Toland not disabled within the meaning of the Social Security Act, and the Social Security Appeals Council denied her request

for review. The ALJ's decision is consequently the final decision of the Commissioner. The district court[1] upheld the administrative decision. On appeal, Toland argues the ALJ, in finding her not disabled, failed to give adequate weight to her treating physician's opinions. Because we find the ALJ had reason to discredit the physician's evaluation, we affirm.[2]

## I. Background

On October 8, 2009, Toland filed applications for both DIB and SSI, claiming disability due to a variety of impairments, including, as most relevant on appeal, degenerative disc disease and leg and shoulder pain. Prior to filing for DIB and SSI, Toland had worked as a sales clerk at a landscaping company, a job that required her frequently to lift more than 50 pounds. Toland alleged she has been unable to perform this work—or any other work—since December 13, 2007.

In support of her applications, Toland submitted medical records detailing the history of her impairments from her general practitioner, Dr. Chris Cobb, and her pain management specialist, Dr. Butchaiah Garlapati.

Dr. Cobb's medical notes indicate that he treated Toland for back pain as early as December 2006. In July 2008, Dr. Cobb described her low back pain as "generally dull/intermittent and aggravated by activity/lessened by rest" and "usually of mild intensity." He also noted several times that Toland had not significantly altered her daily activities despite her pain. Though by 2009 Dr. Cobb attributed Toland's back pain to "severe degenerative disease," he still explained she had not changed her daily

---

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]We have appellate jurisdiction under 28 U.S.C. § 1291.

activities. Toland also informed him her pain was controlled adequately. In June 2009, in addition to prescribing her pain medication, Dr. Cobb encouraged "[n]on-stressful limited weight bearing exercises." Though Toland returned to Dr. Cobb in August 2009 with "severe pain," treatment notes also indicate she still had a normal gait, and normal spinal alignment and mobility. An MRI, obtained that same month, confirmed degenerative disc disease and mild disc bulge.

At Dr. Cobb's recommendation, Toland began seeing Dr. Garlapati in September 2009. Dr. Garlapati's treatment notes indicate Toland suffers from chronic low back pain, for which he prescribed pain medication. He also described her history of surgical procedures to repair her shoulder, femur, knee, and ankle. Toland described her pain at the time as a 7 out of 10. Toland returned the following month complaining of inadequate pain control. Dr. Garlapati continued making adjustments to her medication over the next few months in order to alleviate her pain.

As part of the review of Toland's DIB and SSI applications, Dr. Ted Honghiran performed a consultative examination in January 2010. He found she could dress herself and had full range of motion in her knees and ankles; however, Dr. Honghiran noted she had decreased range of motion in her back. He concluded Toland has chronic low back pain from degenerative disc disease and early-stage arthritis in her left knee. He opined that with these impairments she could not perform the lifting and bending necessary for her landscaping work, but could do work that required less lifting. Two state agency medical staff also reviewed Toland's medical records in January and May 2010 respectively, concurring with Dr. Honghiran's findings. They both further stated that with Toland's physical limitations she could still lift 10 pounds frequently and 20 pounds occasionally; sit and stand for 6 hours in a workday; and climb stairs, balance, stoop, kneel, crouch, and crawl occasionally.

Toland returned to Dr. Garlapati in February 2010, reporting her medication helped her pain, and she did not want to make any medication adjustments. Toland

complained of increased pain on March 2, 2010, but when she returned later that same month she acknowledged the medication helped and her pain had decreased. During that visit, Dr. Garlapati recorded "[p]ain medicines are effective in keeping her pain manageable." As late as October 28, 2010, Dr. Garlapati commented Toland could ambulate without assistance and had a normal gait. She had some decreased range of motion, but Dr. Garlapati refilled her prescriptions without changing the doses. Dr. Garlapati did not see Toland in December 2010, but another doctor noted Toland had decreased range of motion in her back and an asymmetrical gait favoring her left side.

After the Commissioner denied Toland's claim, an ALJ held a disability determination hearing on March 23, 2011. Toland, represented by counsel, testified that she experiences lower back pain with sciatica that limits her ability to sit and stand during the day: she can only sit for 30–45 minutes before needing to stand up, and she can only stand for approximately 5–10 minutes. Toland explained "[s]itting is not the easiest. It's easier—much easier for me to lie down." She said she can walk for 20 minutes at a time, and reported problems reaching overhead because of rotator cuff repair. Toland lost tactile feeling in her fingers due to Lyme disease, but testified she can still separate dollar bills and pick up coins.

Toland also provided the ALJ with Dr. Garlapati's opinion from March 2011 as to her physical limitations; at Toland's request, Dr. Garlapati had completed a medical source statement (MSS)—a pre-printed checklist evaluating Toland's physical abilities—for the ALJ. According to Dr. Garlapati, Toland can lift less than 10 pounds; can stand less than 2 hours in an 8-hour workday; requires a hand-held assistive device for walking; must alternate sitting and standing for pain and discomfort; and has limited abilities to reach with her right arm. Dr. Garlapati also listed several environmental limitations—such as the need to avoid extreme temperature, noise, dust, and vibration—because Toland gets barometric pressure headaches.

After reviewing the record evidence and hearing Toland's testimony, the ALJ asked the vocational expert (VE) whether there were jobs in the national economy for someone who had the following limitations:

> [T]he individual could lift, carry 10 pounds occasionally and less than 10 pounds frequently. Would be able to stand and walk a total of two hours in an eight-hour work period. Sit for six in an eight-hour work period— . . . with the option to alternate standing or sitting. Would be able to push and pull 10 pounds occasionally, less than 10 pounds frequently. Would have no overhead reaching with the right dominant arm. And . . . no sense of touch.

Based on this residual functional capacity (RFC)—i.e., the most Toland can do despite her limitations—the VE stated that such a person could perform the jobs of food checker and ticket seller. The VE clarified that though the Dictionary of Occupational Titles lists ticket seller as "light," rather than "sedentary"[3] work, someone could have a stool in the ticket booth to sit and stand as needed. Consequently, the ALJ determined Toland was not disabled at any time through the date of his decision, and denied her applications for DIB and SSI. The district court upheld the denial of benefits. On appeal, Toland argues substantial evidence does not support the ALJ's determination, challenging the RFC assessment and hypothetical posed to the VE on the grounds that the ALJ improperly discounted her treating physician's opinion.

---

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) (DIB), 416.967(a) (SSI).

## II. Discussion

We review the district court's decision upholding the denial of social security benefits de novo. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). We will affirm the ALJ's determination "if supported by substantial evidence on the record as a whole." Id. "Substantial evidence is 'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" Id. (quoting Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010)). We must take into account evidence in the record that both supports and detracts from the ALJ's conclusion. Id. "[W]e may not reverse [the ALJ] because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." Brown v. Barnhart, 390 F.3d 535, 538 (8th Cir. 2004) (quotation omitted).

The ALJ evaluated Toland's DIB and SSI claims under the regulatory five-step disability analysis. Under this process, the ALJ must determine:

> (1) whether [Toland] is currently employed; (2) whether [she] is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether [Toland] can perform [her] past relevant work; and if not, (5) whether [she] can perform any other kind of work.

Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Steps 4 and 5 require the ALJ to determine a claimant's RFC; again, this is the most the claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a)(1). At dispute in this case is step 5 and Toland's RFC regarding whether she can perform "any other kind of work."

Toland contends the ALJ erred in concluding she retained the RFC to perform other jobs that exist in significant numbers in the national economy. Specifically, Toland argues the ALJ improperly discounted the opinion of treating physician Dr.

Garlapati: the ALJ's determination of her RFC was thus erroneous, and the resulting hypothetical question posed to the vocational expert was flawed.

If "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [an ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Yet "[a] treating physician's opinion 'does not automatically control or obviate the need to evaluate the record as a whole.'" Brown, 390 F.3d at 540 (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)); see 20 C.F.R. §§ 404.1527(b), 416.927(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). "Ultimately, the ALJ must 'give good reasons' to explain the weight given the treating physician's opinion." Anderson, 696 F.3d at 793 (quoting 20 C.F.R. § 404.1527(c)(2)).

In determining Toland's RFC, the ALJ acknowledged giving little weight to Dr. Garlapati's opinion. The ALJ explained Dr. Garlapati's evaluation in the MSS was unsupported by Toland's medical records, daily activities, and work history. We agree; the ALJ had sufficient reason to discount Dr. Garlapati's opinion.

Dr. Garlapati included limitations in the MSS that "are not reflected in any treatment notes or medical records." Id. at 794 (citing Teague v. Astrue, 638 F.3d 611, 616 (8th Cir. 2011)). "A treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." Hacker, 459 F.3d at 937. Here, Dr. Garlapati notes in the MSS that Toland uses a "medically required hand-held assistive device . . . for ambulation." But on October 28, 2010—Dr. Garlapati's most recent recorded appointment with Toland—he stated she was "ambulating without assistance." There is no evidence in the record that he or any other physician prescribed Toland a cane or other assistive device for walking.

Although Toland reported using a cane "when [her] back is having muscle spasms," she confirmed it was not prescribed by any physician. Similarly, Dr. Garlapati cited several environmental restrictions: Toland should avoid temperature changes, noise, dust, vibration, humidity/wetness, hazards (e.g., machinery, heights), and fumes, odors, chemicals, and gases. At the hearing, Toland stated she "went though a period where [her barometric] headaches were really bad." Still, Dr. Garlapati provides no explanation for why these restrictions are necessary. And again, neither Dr. Garlapati's treatment records nor the other medical evidence in the record provides a medical justification for these restrictions.

Toland's self-reported abilities further undermine Dr. Garlapati's opinion. Toland reported living independently and caring for herself and her dogs. She also stated she is capable of light gardening, attending yard sales, and performing household chores such as sweeping the floors, doing laundry, and grocery shopping on a regular basis. Toland admitted doing landscaping and gardening work even after the alleged onset date of her disability. In April 2008, she told Dr. Cobb "[s]he planted 65 flats of plants over the weekend." As late as June 2010, Toland told her psychiatrist she was working part-time at a garden center.[4] And in December 2010, two months after her last reported appointment with Dr. Garlapati, she told her psychiatrist that she intended to rent a booth to sell items at a local market. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of

---

[4]Toland correctly points out there is no evidence her landscaping and gardening after 2007 constituted substantial gainful activity (SGA). 20 C.F.R. §§ 404.1505(a), 416.905(a) (defining "disability," in part, as "the inability to do any substantial gainful activity"); see also 20 C.F.R. §§ 404.1510, 416.910 (defining SGA as work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit"). The ALJ still properly considered her work as a reflection of her physical abilities for purposes of the RFC determination. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (finding even part-time work relevant to a claimant's RFC determination).

disabling pain."). Toland's doctors did warn her against overexertion, yet none imposed specific activity restrictions as part of their treatment. Indeed, they repeatedly remarked she did not make lifestyle changes despite her complaints of pain. Toland did not explain or qualify her activity level at the hearing. Though "a claimant 'need not be completely bedridden . . . to be considered disabled,' if a doctor evaluates a patient as having more physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency." Anderson, 696 F.3d at 794 (quoting Ludden v. Bowen, 888 F.2d 1246, 1248 (8th Cir. 1989)). Toland's admitted activities suggest she is capable of doing more than Dr. Garlapati indicated.

Toland's activity level aside, Dr. Garlapati provides little analysis in the MSS. We have stated that "[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (quotation omitted); see also Anderson, 696 F.3d at 794 ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration." (quotation omitted)). Given the conclusory nature of Dr. Garlapati's opinion, the ALJ did not err in relying more heavily on other opinions in the record.

Instead, the ALJ gave "considerable weight" to the opinion of consulting physician Dr. Honghiran. In January 2010, Dr. Honghiran examined Toland, reviewed her past medical records and took new X-rays of her hips, knees, and ankles. Consistent with Dr. Garlapati's and Dr. Cobb's treatment records, he concluded Toland has chronic pain due to degenerative disc disease; he also found she has early-stage arthritis in her left knee. Based on these findings, Dr. Honghiran stated Toland could no longer perform her prior landscaping work; however, he did not find she could not work at all. She needed work requiring less lifting and bending. Two additional state agency medical consultants, who later reviewed the

medical evidence in the record, agreed with Dr. Honghiran's findings and concluded Toland had physical limitations consistent with the ALJ's RFC. See SSR 96-6P, 1996 WL 374180 *2 (July 2, 1996) ("State agency medical and psychological consultants are highly qualified physicians" whose expert opinions cannot be ignored by ALJs or the Appeals Council.). Given these medical opinions and Toland's extensive medical records, we find substantial evidence in the record supported the ALJ's RFC determination. And, as a result, we further conclude the ALJ's hypothetical to the VE—and his reliance on the VE's response—was proper.

### III. Conclusion

Accordingly, we find the ALJ's determination is supported by substantial evidence, and we affirm the district court's denial of Toland's social security applications.

_____