# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-1260

_____

Kandi Cline

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Social Security Administration Commissioner

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: September 10, 2014
Filed: November 19, 2014

_____

Before RILEY, Chief Judge, BRIGHT and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

Kandi Cline appeals from an order of the district court[1] affirming the Social Security Administration Commissioner's (commissioner) decision to deny her

_____

[1]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

application for supplemental security income (SSI) under the Social Security Act (Act), 42 U.S.C. § 1381 et seq. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

# I. BACKGROUND

## A. Medical Evidence

On November 10, 2009, Kandi Cline applied for SSI, alleging she was disabled due to back pain, scoliosis, mitral valve prolapse, sacroilitis, and fibromyalgia. To support her disability claim, Cline submitted extensive medical records. From April 4, 2001, to January 24, 2006, Joseph B. Pierce, M.D., and other providers at the Caraway Medical Center treated Cline for, among other issues, chronic back pain, chronic neck pain, and lumbosacral neuritis. A September 2005 CT scan of Cline's lumbar spine showed "a tiny central disc protrusion at L5-S1 which is causing minor effacement of the ventral thecal sac, but no significant central canal or neural foraminal narrowing." MRIs of Cline's lumbar spine in October 2005 and September 2006 were normal.

Roger Cagle, M.D., treated Cline for approximately two years beginning in the fall of 2006. Dr. Cagle prescribed pain medication for Cline's lower back pain and muscle spasms. Dr. Cagle's notes indicate Cline denied unusual weakness, drowsiness, and chronic fatigue. Dr. Cagle noted Cline showed no neurological deficits, nor any cyanosis, clubbing or edema of her extremities. On September 24, 2008, Dr. Cagle diagnosed lower back pain, degenerative arthritis of the spine, and muscle spasms.

On August 7, 2007, orthopedist Patricia Knott, M.D., diagnosed Cline with spastic colon, mitral valve prolapse, and lumbar pain with possible degenerative disc changes—though Dr. Knott noted she had no CT scan or MRI results on which to base her diagnosis. Dr. Knott observed Cline had normal motor strength in her upper extremities and some weakness in her hip flexion, left knee, and ankle. Dr. Knott

found normal deep tendon reflexes in Cline's upper extremities, scattered deficits in her lower extremities with no neurologic pattern, a normal range of motion in her lumbar spine with complaints of stiffness, and an abnormal lumbar extension. Dr. Knott concluded Cline could frequently lift and carry up to ten pounds and occasionally lift and carry up to twenty pounds; stand and walk for two hours during an eight-hour day; sit for six hours during an eight-hour day; but should never balance, stoop, or crouch, and should avoid all exposure to heights.

On August 27, 2007, Steven Harris, Ph.D., a certified mental-health examiner, examined Cline at the request of the Social Security Administration. Based on Cline's responses to diagnostic testing, Dr. Harris concluded Cline exaggerated her clinical symptoms and possibly overemphasized her chronic pain, "either consciously or unconsciously."

From November 2008 to March 2010, Henry Allen, M.D., treated Cline for lower back pain. In March 2010, Dr. Allen completed a medical source statement. Relying on Cline's subjective complaints of pain, Dr. Allen opined Cline could frequently lift and carry ten pounds; sit three hours of an eight-hour workday; and stand or walk three hours of an eight-hour workday. Dr. Allen further stated Cline should not climb or balance and only occasionally stoop, kneel, crouch, or bend. Dr. Allen based his opinion on the 2005 "CT scan with disc bulge at L5-S1 of lumbar spine, osteoarthritis, [and] possible fibromyalgia."

On June 18, 2009, Cline saw Gina McNew, M.D., to treat her chronic lower back pain and for a second opinion about fibromyalgia. Dr. McNew noted mild scoliosis and multiple areas of tenderness and muscle spasms in Cline's back but reported Cline was not in acute distress and demonstrated a normal range of motion, reflexes, and strength in her extremities. Dr. McNew diagnosed degenerative arthritis of the spine, muscle spasms, fibromyalgia, and sacroilitis. Dr. McNew recommended regular aerobic exercise and advised Cline to "seek disability for her chronic back

pain and fibromyalgia which seems severe enough to limit her capabilities to carry on full time employment."

On June 23, 2010, on Dr. McNew's referral, neurosurgeon John A. Campbell, M.D., examined Cline and observed no apparent distress, a slight limp, poor range of motion in her lumbar spine, and tenderness to palpation over her bilateral sacroiliac joints. Dr. Campbell reported Cline walked independently and showed full strength in her lower extremities. When a June 2010 MRI of Cline's lower spine revealed only minimal posterior facet joint effusions at levels L3-L5, otherwise normal lumbar spine, and no major interval change since the October 2005 MRI, Dr. Campbell concluded surgery was not necessary and released Cline from his care. Dr. Campbell recommended physical therapy and pain management.

On May 13, 2011, Cline saw rheumatologist Randy Roberts, M.D., complaining the chronic pain in her lower back had spread to her upper back, shoulders, and legs. Cline complained the pain kept her awake, gave her periodic headaches, and caused numbness and tingling in her hands and feet. Dr. Roberts identified trigger points over Cline's trapezius, rhomboids, piriformis and sacroiliac joints. Dr. Roberts noted Cline appeared healthy and had a full range of motion in her neck, shoulders, spine, and hips. Dr. Roberts diagnosed fibromyalgia.

## B. Administrative Decision

The commissioner denied Cline's application. On August 17, 2011, an administrative law judge (ALJ) held a hearing at Cline's request. Cline was forty-four at the time of the hearing and testified she is divorced, lives with her mother, and has a twelfth-grade education. Although she previously worked in a variety of jobs, Cline now has no income and depends on her family for support.

Cline reported she is disabled due to chronic back pain, fibromyalgia, and degenerative arthritis. Cline cares for her ailing mother, performing housework,

cooking, washing dishes, and doing laundry. She also drives a car and shops for groceries once a month but is most comfortable lying down, which she does at least twice per day for thirty minutes. Cline testified she can only lift and carry up to ten pounds, stand for fifteen or twenty minutes, walk for ten or fifteen minutes, and sit for thirty minutes without back pain.

Diane Smith, a vocational expert (VE), testified Cline performed past relevant work as a home care attendant, janitor, packer, office clerk, and magazine binder. Cline's past work ranged from unskilled to semi-skilled and from light to medium intensity. In a hypothetical question that assumed Cline's age, education, work experience, and residual functional capacity to do "no more than light work with [a] sit/stand option," the VE testified such a person could work as a packer or office clerk. In response to a second hypothetical, which also limited the worker to sedentary work, the VE testified such a person could work as a receptionist or a semi-conductor assembler, both of which exist in significant numbers in the local and national economies.

Cline then posed her own hypothetical question, based on a March 5, 2010, medical statement from Dr. Allen, Cline's treating physician. Assuming a person of Cline's age, education, and work history who could frequently lift and carry up to ten pounds; stand or walk a total of three hours in an eight-hour day; sit for a total of three hours in an eight-hour day; never climb or balance; and only occasionally stoop, kneel, crouch, or bend, the VE answered there would be no jobs such a person could perform because her "physical functioning capability is less than a normal workday."

On September 7, 2011, the ALJ analyzed Cline's claim using the familiar five-step sequential analysis required by the social security regulations and concluded Cline was not disabled. See 20 C.F.R. § 416.920(a)-(f). The ALJ found, in relevant part, that Cline (1) had "not engaged in substantial gainful activity since November 10, 2009, the amended alleged onset date and application date"; (2) suffered from the

severe impairments "degenerative arthritis and fibromyalgia"; (3) did not, despite those severe impairments, have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1"[2]; (4) "ha[d] the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)"; (5) "[wa]s capable of performing past relevant work as a packer, binder, and office clerk"; and (6) was thus not disabled as defined in the Act.

On January 7, 2013, the appeals council denied Cline's request for review, making the ALJ's decision the final decision of the commissioner. See Young v. Astrue, 702 F.3d 489, 491 (8th Cir. 2013). Cline sought judicial review under 42 U.S.C. § 405(g), and the district court affirmed the denial of Cline's claim. Cline timely appealed, arguing the commissioner improperly discredited the opinion of Cline's treating physician.

## II.    DISCUSSION

Reviewing de novo the district court's decision affirming the denial of disability benefits, we will affirm if "the Commissioner's denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

> Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the

---

[2]At step four, the ALJ, noting Cline had been "untruthful with treating and examining physicians" and had exaggerated her symptoms, concluded Cline's subjective complaints were not entirely credible. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (order) (describing factors to consider in evaluating the credibility of a claimant's subjective allegations of pain and disability).

record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002) (internal citations omitted). "'We do not reweigh the evidence,'" and we defer to the commissioner's credibility determinations if they "are supported by good reasons and substantial evidence." Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006) (quoting Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003)).

Cline argues the commissioner's "decision at step four that Kandi Cline is not disabled because she can perform her past relevant work is not supported by substantial evidence on the record as a whole." In Cline's view, the commissioner "wrongly discounted the opinion of Dr. Allen, Cline's treating doctor." We disagree.

Under the social security regulations, the commissioner will generally give a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2)[3]; see also Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). Yet such weight is neither inherent, see Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006), nor automatic and does not "obviate the need to evaluate the record as whole," Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). The commissioner "'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such

---

[3]For clarity, we note the agency moved the operative language from § 416.927(d)(2) to § 416.927(c)(2) in 2012.

opinions.'" Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012) (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)); accord Hacker, 459 F.3d at 937 (noting we have declined "to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her . . . assessment").

Whether granting "a treating physician's opinion substantial or little weight," Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000), the commissioner must "always give good reasons . . . for the weight" she gives, 20 C.F.R. § 416.927(d)(2). The commissioner has done so here.

After thoroughly examining Cline's hearing testimony and medical records, the commissioner afforded Dr. Allen's opinion "little weight" because it was "inconsistent with the treatment records and the objective medical evidence as a whole" and was "not supported by [Dr. Allen's] own physical examinations [of Cline] and the objective test results." In particular, the commissioner noted Dr. Allen reported in March 2009 that a physical examination of Cline was "negative for abnormalities" yet opined a few weeks later that Cline had significant limitations due to a disc bulge, osteoarthritis, and possible fibromyalgia. Recognizing Dr. Allen's statement did "not contain citations to medical tests or diagnostic data," the commissioner concluded Dr. Allen's finding of a disc bulge based on the 2005 CT scan—which noted only a "tiny" protrusion but "no significant central canal or neural foraminal narrowing"—was inconsistent with more-recent MRI scans showing no bulge and no significant abnormalities. In evaluating the 2010 MRI and determining Cline had the residual functional capacity to perform light work, the commissioner partially credited the medical opinions of Cline's other treating and examining physicians, including Dr. Campbell,[4] Dr. Roberts, and Dr. Knott. "It is the function

[4]Part of the decision refers to Dr. Roberts when it is clear from the analysis that the commissioner is relying on Dr. Campbell's report.

of the [commissioner] to weigh conflicting evidence and to resolve disagreements among physicians." Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007).

Dr. Allen's cursory checklist statement also includes significant impairments and limitations that are absent from his treatment notes and Cline's medical records. See Wildman, 596 F.3d at 964 (concluding the commissioner "properly discounted" a treating physician's opinion that "consist[ed] of three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration"). While a checklist evaluation can be a source of objective medical evidence, "[w]e have upheld [the] decision to discount a treating physician's [statement] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records o[f] treatment nor supported by any objective testing or reasoning." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting Hogan, 239 F.3d at 961) (internal marks omitted).

Cline concedes "Dr. Allen's treatment notes do not show radiological or clinical findings relating to osteoarthritis or fibromyalgia" but suggests the commissioner should have assumed there was some undisclosed support underlying Dr. Allen's assertions or should "fill in the missing clinical findings" from "[t]he notes and reports of other doctors." The commissioner need not patch the holes in a treating physician's porous opinion nor give the opinion controlling weight under such circumstances. See 20 C.F.R. § 416.927(d)(2); Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.").

Cline's lack of "credibility regarding both the severity of her impairments and the limitations that they impose" also undermine Dr. Allen's statement, which expressly relied on Cline's subjective complaints of pain and discomfort. The commissioner partially discredited Cline's testimony because Cline was "untruthful

with treating and examining physicians" and exaggerated "the intensity, persistence, and limiting effects" of her symptoms.  Specifically, the commissioner found Cline undermined her credibility by "repeatedly stat[ing] she has bulging discs in her back" despite "MRI scans [that]  have not revealed any significant abnormalities to explain [Cline's] subjective complaints."   "The [commissioner] was entitled to give less weight to Dr. [Allen's] opinion, because it was based largely on [Cline's] subjective complaints rather than on objective medical evidence," Kirby, 500 F.3d at 709, and could further discount or disregard any conclusions based on Cline's discredited subjective complaints. See Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir. 1996).

Upon careful review of the record, we are satisfied the commissioner did not err in affording "little weight" to Dr. Allen's opinion, and we conclude "substantial evidence in the record as a whole" supports the commissioner's decision that Cline was not disabled under the Act.  Ford, 518 F.3d at 981.

## III.   CONCLUSION
For the reasons stated, we affirm the denial of benefits.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent.  Because the ALJ failed to provide "good reasons" for rejecting Dr. Allen's medical opinion, I would reverse and remand to the district court with instructions to remand to the ALJ so that it may reconsider Cline's application after giving Dr. Allen's opinion proper weight.

In assessing whether a claimant is disabled for the purposes of determining eligibility for Social Security benefits, the ALJ must give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  If these

-10-

conditions are not satisfied, less weight may be given to the treating physician's opinion, but the ALJ must always "give good reasons" for doing so. <u>Anderson v. Astrue</u>, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, some conflict exists among the opinions of various physicians as to the nature and extent of Cline's medical condition. In assessing this evidence, the ALJ gave "little weight" to the opinion of Dr. Allen, Cline's treating physician, on the ground that "it is inconsistent with [his] treatment records and the objective medical evidence as a whole." The record does not support this conclusion.

Dr. Allen's treatment notes are not inconsistent with his medical source statement. Dr. Allen's notes reflect that from November 2008 to March 2010, he frequently treated Cline for severe back pain and prescribed her medication for pain management. Cline's chronic back pain is consistent with Dr. Allen's opinion that Cline is unable to perform light work. Moreover, the lack of physical abnormalities found by Dr. Allen during his examination of Cline on March 5, 2010,[5] is hardly inconsistent with the medical source statement he completed that same day. The "General Examination" listed in Dr. Allen's March 2010 treatment notes appears to be exactly that: general. The examination lacks any indicia that it was targeted at diagnosing more complex conditions such as fibromyalgia or spinal abnormalities. And even if the examination was more thorough than the treatment notes indicate, the ALJ failed to acknowledge that a physical examination yielding normal results is consistent with a diagnosis of fibromyalgia—a condition that Dr. Allen listed as a basis for his opinion that Cline is unable to perform light work. <u>See Green-Younger v. Barnhart</u>, 335 F.3d 99, 108-09 (2d Cir. 2003) (noting that physical examinations of those with fibromyalgia "will usually yield normal results—a full range of motion,

---

[5]Attempting to compare Dr. Allen's medical opinion with contemporaneous physical examinations, the ALJ appears to have mistakenly relied on the March 5, 2009, examination of Cline, which Dr. Allen completed one year prior to his March 2010 medical source statement.

-11-

no joint swelling, as well as normal muscle strength and neurological reactions" (citation and internal quotation marks omitted)).

Nor is Dr. Allen's opinion inconsistent with the objective medical evidence as a whole. This is not a case in which the overwhelming thrust of the medical evidence suggests that Cline is able to perform light work. At the very least, the record includes objective medical evidence supporting each party's position. Although the ALJ can "weigh conflicting evidence to resolve disagreements among physicians," Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007), it cannot reject a treating physician's opinion simply because the objective medical evidence is mixed. See 20 C.F.R. § 404.1527(c)(2).

Furthermore, the ALJ was not entitled to reject Dr. Allen's opinion on the ground that the physical limitations set forth in his medical source statement are not listed in his treatment notes. The ALJ has an "independent duty to develop the record" and is required "to seek additional clarifying statements from a treating physician" when "a crucial issue is undeveloped." Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005); see also Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002) (explaining that the ALJ was obligated to contact the treating physician for additional evidence or clarification where the entries in his medical notes were "somewhat conclusory"). Dr. Allen treated Cline more frequently and for a longer period of time than any other after November 10, 2009—the alleged disability onset date. Thus, it stands to reason that of all doctors whose medical opinions appear in the record, Dr. Allen was "most able to provide a detailed, longitudinal picture of [Cline's] medical impairment[s]," which is the very reason we presume that a treating physician's opinion is of utmost importance in assessing a claimant's application for benefits. 20 C.F.R. § 404.1527(c)(2). Because Dr. Allen's medical opinion was itself a "crucial issue" in this litigation, the ALJ was obligated to seek clarifying evidence

from Dr. Allen if concerned that his treatment notes were inadequate, unclear, or incomplete.[6] See Goff, 421 F.3d at 791.

In closing, I fear that the majority's decision today reflects this court's increasing tendency to rubber stamp an ALJ's action instead of subjecting it to the "scrutinizing analysis" required by our precedent. See Cooper v. Sullivan, 919 F.2d 1317, 1320 (8th Cir. 1990). The ALJ's rejection of Dr. Allen's opinion was error in light of the record as a whole. Because the ALJ failed to provide "good reasons" for rejecting Dr. Allen's opinion, 20 C.F.R. § 404.1527(c)(2), and because such error was not harmless, I would reverse and remand to the district court with instructions to remand to the ALJ so that it may reconsider Cline's application after giving Dr. Allen's opinion proper weight.

———————————————

---

[6]Although the ALJ may reject a treating physician's opinion without seeking additional evidence when the opinion is "inconsistent with other substantial evidence" in the record, Goff, 421 F.3d at 791, this case does not present such a scenario for the reasons discussed.