# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3012
_____

Carrie Andrews

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 13, 2015
Filed: July 2, 2015

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Carrie Andrews appeals from the district court's[1] order affirming the Commissioner of the Social Security Administration's (the "Commissioner") denial

_____

[1]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

of Andrews' application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively.  We affirm.

## I.    BACKGROUND

Andrews was born on February 1, 1976.[2]  She has a GED and has past relevant work as a cashier, retail sales clerk, and a secretary/receptionist, all of which jobs are classified as sedentary or light duty work.  On October 19, 2010, Andrews filed applications for both DIB and SSI, claiming a disability onset date of October 23, 2007.  Andrews claims she is disabled and unable to work as a result of fibromyalgia/chronic pain syndrome, cervical disc disease, migraine headaches, major depressive disorder, generalized anxiety disorder and borderline personality disorder. The Commissioner denied her application initially and upon reconsideration.  On December 1, 2011, Andrews had a hearing before an Administrative Law Judge (ALJ).

In support of her applications, Andrews submitted extensive medical records, including records showing frequent visits to her treating physician, Dr. Wandal Money, and to the emergency room.  Between June 2007 and October 2012, Dr. Money treated Andrews on thirty-two different occasions for headaches, chronic pain syndrome, fibromyalgia and myofascial pain disorder.  Based upon his interactions with Andrews over this course of treatment, Dr. Money submitted a medical source statement ("MSS") opining that Andrews is limited to occasionally and frequently lifting less than ten pounds, standing and walking less than two hours out of an eight-hour day, and sitting less than four hours in an eight-hour day.  Dr. Money further indicated that Andrews would need frequent rest periods, longer than normal breaks,

---

[2]At the time of the Administrative Law Judge's decision Andrews was thirty-six years old.

and the opportunity to change positions frequently or shift at will from sitting to standing/walking. Additional limitations Dr. Money noted included Andrews' inability to reach, finger, or handle due to numbness and tingling in her hands, and the need to avoid all exposure to extreme heat, humidity, fumes, odors, dusts, gases, perfumes, solvent cleaners, chemicals, and sunlight. Finally, Dr. Money believed Andrews would likely have more than four absences from work per month due to her impairments. Dr. Money's opinion of Andrews' limitations, if deemed controlling, would have resulted in a finding of total disability.

Nonetheless, in determining Andrews' residual functional capacity ("RFC"), the ALJ placed little weight on Dr. Money's opinion. Instead, the ALJ evaluated the opinions of the following state agency medical consultants: an agency physician who reviewed Andrews' records and offered an opinion about Andrews' physical RFC, an agency psychologist who personally examined Andrews, and an agency physician consultant who reviewed the psychologist's examination of Andrews and offered an opinion on Andrews' mental health RFC. With regard to Andrews' physical RFC, the state agency physician opined Andrews could perform sedentary work with postural limitations and avoidance of humidity and vibration. The physician felt Andrews had the ability to stand and/or walk for a total of at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday and perform unlimited pushing and/or pulling with the upper and lower extremities. In addition, the physician found Andrews able to frequently climb ramps and stairs, frequently balance, and occasionally stoop, kneel, crouch and crawl. The agency psychologist diagnosed Andrews with generalized anxiety disorder, mood disorder and borderline personality disorder, but also found that Andrews was able to manage daily activities of living autonomously, and possessed the cognitive capacity to perform basic work-life tasks. The state agency consultant physician concluded Andrews was able to perform work where interpersonal contact is incidental to the work performed, where the complexity of the task is learned and performed by rote with few variables and little judgment involved, and where supervision is simple, direct and concrete. The ALJ placed

significant weight on the opinions of these state agency medical consultants in her final decision.

At the hearing before the ALJ, Andrews, her roommate Michael Wade, and a vocational expert (VE) testified. Andrews spoke about her limitations as a result of her fibromyalgia/chronic pain and her migraines, and Wade corroborated Andrews' testimony, stating that she spends most of the day in her room. The VE testified that Andrews' past relevant work was light, semi-skilled and unskilled work, or sedentary semi-skilled work. The ALJ asked the VE whether there were jobs in the national or regional economy for an individual that possessed Andrews' age, education and work history and had the following limitations:

> [C]ould perform no greater than sedentary work as defined in the regulations, frequently climb stairs, never climb ladders, frequently balance, occasionally stoop, kneel, crouch, crawl; and in addition this individual is only able to perform work where the complexity of a task is learned and performed by rote with few variables and little judgment; work in an environment where there are few, if any, workplace changes; perform work in an environment where interpersonal contact is incidental to the work performed and where supervision is simple, direct, and concrete.

The VE opined that such an individual could perform the unskilled, sedentary jobs of a document preparer and a call-out operator, and stated that such jobs existed in the national and regional economy. The VE also stated that he did not believe such an individual could perform any of Andrews' past work. The ALJ credited the VE's testimony in her final decision to deny Andrews' request for benefits.

Subsequently, the ALJ released a decision finding Andrews: (1) had not engaged in substantial gainful activity since her alleged onset date; (2) had "severe impairments," including fibromyalgia/chronic pain syndrome, cervical disc disease, migraine headaches and depression and anxiety disorders; (3) did not have an

impairment or combination of an impairment that meets the listed impairments in 20 C.F.R. Part 404 (the "Listings"); (4) had the RFC to perform sedentary work with some limitations, but is unable to perform any of her past relevant work; but (5) could perform other jobs existing in significant numbers in the national economy, such as a document preparer or a call-out operator.  Accordingly, the ALJ found Andrews was not disabled within the meaning of the Social Security Act.  The Social Security Appeals Council ("the Council") denied Andrews' request for review of the ALJ's decision, therefore making the ALJ's decision the final decision of the Commissioner.  Following the Council's denial of her request for review of the ALJ's decision, Andrews sought judicial review of the final decision denying her DIB and SSI claims, and the district court upheld the Commissioner's denial of the benefits.  Andrews appeals, arguing the ALJ's determination is not supported by substantial evidence on the record, and that the ALJ improperly rejected Dr. Money's opinion and Andrews' testimony regarding her subjective pain and resulting limitations.

## II.    DISCUSSION

We review de novo a district court's decision upholding the Commissioner's denial of Social Security benefits and will affirm the ALJ's decision if it is "supported by substantial evidence on the record as a whole."  Toland v. Colvin, 761 F.3d 931, 935 (8th Cir. 2014) (quotation omitted).  Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."  Id. (quotation omitted).  Evidence that both supports and detracts from the ALJ's decision must be taken into account, but "as long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence [also] exists in the record that would have supported a contrary outcome, or because we would have decided the case differently."  Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014) (quotation omitted).

The ALJ evaluated Andrews' DIB and SSI claims under the Social Security regulation's five-step analysis. During this process the ALJ must determine: "1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (quotation omitted); see also 20 C.F.R. § 416.920. If, at any point in this five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). "The fourth step in this analysis requires the ALJ to determine a claimant's RFC," which is the disability claimant's burden to establish. Id. (quotation omitted).

In this case, only the fourth and fifth steps are in dispute–Andrews argues the ALJ's determination that she has the RFC to perform a limited range of work is not supported by the substantial evidence on the record as a whole. Andrews contends the ALJ, in determining her RFC, erred in discounting the testimony of Dr. Money and her own testimony, and that the ALJ's reasons for discounting this testimony are not supported by the record.

A claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record. Cline, 771 F.3d at 1103. A treating physician's opinion may be discounted or entirely disregarded "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. (quotation omitted). In either case–whether granting a treating physician's opinion substantial or little weight–the Commissioner or the ALJ must give good reasons for the weight apportioned. Id.

In determining Andrews' RFC, the ALJ appropriately considered, but gave little weight, to Dr. Money's opinion. The ALJ explained Dr. Money's evaluation in the MSS was inconsistent with other record evidence, including Dr. Money's own treatment notes, which rendered Dr. Money's opinion unreliable. We find the ALJ gave sufficient reasons to discount Dr. Money's opinion. First, as noted by the ALJ, Dr. Money's treatment notes indicated Andrews' pain was adequately controlled with her pain medications on numerous occasions in 2010, 2011 and 2012–including the day Dr. Money completed Andrews' MSS–with only occasional breakthrough pain. Second, the ALJ found Andrews' statements concerning her pain and other symptoms not fully credible, concluding the record evidence did not fully support her claims. The record contains several instances in which Andrews reported to various medical providers, and noted in disability paperwork, that she was able to do a wide range of daily activities, including that she was able to cook, clean, drive, shop, and take care of her personal grooming and hygiene. The ALJ found that this evidence shows that Andrews is not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. Additionally, the ALJ further cited Andrews' demeanor and "apparent lack of discomfort" during the administrative hearing, and non-compliance with medication regimens as reasons for discounting her credibility.

The ALJ also noted that Dr. Money based his opinion "on claimant's subjective complaints alone" and that Dr. Money had "admitted that claimant's pain was a subjective problem, with no objective findings" when discounting Dr. Money's opinion. However, like the district court, we agree with Andrews that the ALJ overstates Dr. Money's findings in interpreting these limited statements. But, as explained by the district court, the ALJ did not err in discounting Dr. Money's opinion on the basis that he relied to some degree on Andrews' subjective allegations regarding the duration, intensity and limiting effects of her pain–the allegations of which were not conclusively supported by objective testing. Thus, having reviewed the record and the ALJ's reasoning, we find the ALJ provided sufficient rationale for the weight she

gave to Dr. Money's opinion, and that such weight was supported by substantial evidence on the record as a whole.

We also find the ALJ did not err in her credibility analysis of Andrews. Subjective allegations of pain may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ cited supporting reasons for discounting Andrews' credibility, including Andrews' daily activities, her appearance at the hearing and non-compliance with medication regimens. The ALJ is in a better position to evaluate credibility, and therefore we defer to her determinations as they are supported by sufficient reasons and substantial evidence on the record as a whole. Id.

## III. CONCLUSION

We find the ALJ's determination is supported by substantial evidence and affirm the denial of benefits.

_____

-8-