**La Vern GUDE, Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Appellee.**

**No. 91–1464.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1991.

Decided Feb. 7, 1992.

**792**

Thomas E. Kalmbach, Clayton, Mo., argued, for appellant.

Therese A. Yost, Kansas City, Mo., argued (Stephen B. Higgins, U.S. Atty., and Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., and Frank V. Smith, III and Mary Dey Purcell, Kansas City, Mo., on brief), for appellee.

Before ARNOLD,* Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HEANEY, Senior Circuit Judge.

La Vern Gude appeals from the order of the district court affirming the Secretary of Health and Human Services' (Secretary) denial of her application for social security disability and Supplemental Security Income (SSI) benefits. We reverse and remand with instructions to the Secretary to grant benefits.

### Background

Gude is a twenty-eight year old woman with a high school education. She has an IQ of 75, which puts her in the borderline range of intelligence. Gude claims to have been disabled since July 5, 1986 due to systemic lupus erythematosus (SLE) and seizures. SLE is a chronic, relapsing inflammatory disease that attacks connective tissues and is characterized by a wide range of symptoms, including arthritis, pain in the joints, kidney and blood disorders, skin eruptions, and fever. *Dorland's Illustrated Medical Dictionary* 958 (27th ed. 1988).

Gude filed her claim for benefits on December 16, 1987. Her claim was denied initially and on reconsideration. Gude then requested and received a hearing before an administrative law judge (ALJ). At the hearing, Gude testified that she has suffered from pain and swelling in her knees and hands since she got SLE in 1986. Gude stated that she takes prednisone to control her SLE, but that the drug makes her dizzy and causes swelling. Gude said that she also has bad headaches about once a week for which she takes Dolobid,[1] although the drug has little effect; that she is often fatigued; that bright sunlight gives her skin rashes and hurts her eyes; that her doctor told her not to go outside in temperatures above eighty degrees or below thirty degrees; and that she has four "bad" days each week. Gude stated she did not drive or go grocery shopping and did little housework because of fatigue. Her activities consist of going to church once a week, taking short walks, reading, and watching TV until her eyes give her trouble.

Gude's last job was as a pre-school babysitter in 1986; she left that job because parents complained that the swelling of her hands interfered with her work. Before that, Gude put tags on clothes at Goodwill Industries, was a cashier and cook at two fast food restaurants, and was a file clerk.

The medical evidence in the record indicates that Gude was hospitalized on July 13, 1986 complaining of chest and rib pain. She was diagnosed as having pneumonia and SLE. The next month Gude was hospitalized for renal failure; manifestations of her SLE during that hospitalization included grand mal seizures associated with lupus cerebritis, joint pains, and hematological abnormalities. Since then, Gude has seen her treating physician, Eric Jacobson, M.D., approximately every three months, but sometimes more frequently. In a September 7, 1988 letter, Dr. Jacobson reviewed Gude's past manifestations of SLE, including arthritis, joint pain, hair loss, kidney disease, and seizures. After noting that Gude's condition had "stabilized over the past year," Dr. Jacobson stated that

---

* The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. Dolobid is a non-steroidal drug with analgesic and anti-inflammatory properties. *Physicians' Desk Reference* 1369 (44th ed. 1990).

Gude's present symptoms include migratory arthritis, severe headaches, fatigue, persistent hair loss, and mild photosensitive skin rash. Although Dr. Jacobson noted that the medication he prescribed "seems to control her symptoms rather well," he concluded that Gude's prognosis was unclear and that her "symptoms are significant and would interfere with permanent employment."

Following the hearing, the ALJ found Gude not disabled. The ALJ did not believe Gude's allegations concerning her severe chronic headaches, discomfort, and severely restricted activities. Although he acknowledged that Gude had SLE in remission, fatigue, joint stiffness, a borderline intellectual function, and a history of one seizure, he found that she did not have an impairment or combination of impairments listed in Appendix 1, Subpart P of the social security regulations. The ALJ then found that Gude could not perform her past relevant work as a fast food restaurant worker, babysitter, Goodwill employee, or file clerk, and that Gude could not work in bright sunlight, lift more than ten pounds, or walk or stand for prolonged periods. Nonetheless, the ALJ concluded that Gude had the residual functional capacity to perform the full range of sedentary work, applied the Medical–Vocational Guidelines, and found Gude not disabled. The Appeals Council denied Gude's request for review, making the ALJ's decision the final decision of the Secretary.

Gude sought review in the United States District Court for the Eastern District of Missouri. Magistrate Judge Robert Kingsland recommended that Gude's case be remanded because the ALJ failed to call a vocational expert to testify regarding Gude's ability to perform other jobs in the economy. The district court declined to adopt the magistrate's recommendation and granted summary judgment for the Secretary. In the district court's view, the ALJ did not need to call a vocational expert because the ALJ's decision to discredit Gude's claim of pain was supported by the record. This appeal followed.

*Discussion*

The ALJ concluded that Gude's claims of pain and discomfort were not credible and that Gude could do sedentary work. Gude claims that substantial evidence in the record as a whole fails to supports these conclusions. We agree.

1. Treating physician's opinion

The ALJ did not give due deference to the opinion of Dr. Jacobson, Gude's treating physician. The opinion of a treating physician is entitled to great weight unless it is unsupported by medically acceptable clinical or diagnostic data. *Kirby v. Sullivan*, 923 F.2d 1323, 1328 (8th Cir. 1991). Here, Dr. Jacobson's letter set forth Gude's present symptoms, characterized them as significant, and concluded that they would interfere with permanent employment. Although Dr. Jacobson's conclusions are well supported by the medical evidence in the record, and there is no contrary medical evidence, the ALJ chose to disregard Dr. Jacobson's findings.

The ALJ did so by relying on statements in Dr. Jacobson's letter which, in the ALJ's view, minimized the significance of Gude's symptoms. As the ALJ noted, Dr. Jacobson's letter stated that Gude's SLE had been in remission, that her condition had stabilized, that her symptoms were controlled by prednisone, and that she had not experienced any seizures since August 1986. While these statements by Dr. Jacobson are well supported by the record, we believe the ALJ took these statements out of context and ignored the thrust of Dr. Jacobson's report. The fact that Gude's SLE is "in remission" and "has stabilized" does not mean that Gude's symptoms have gone away or that they do not exist. Indeed, Dr. Jacobson's letter stated that Gude has continued to experience precisely the symptoms she related during her hearing testimony, and it characterized Gude's *present symptoms* as significant.

Significantly, Dr. Jacobson's medical notes indicate that Gude has had symptoms associated with her SLE even while she has been in "remission." For example, on No-

vember 25, 1987, Dr. Jacobson noted that Gude "[c]ontinues to do well," even though Gude complained of chronic fatigue, hair loss, and persistent joint pains and stiffness in her hands and knees. It may well be that Gude was "doing well" during 1987—for someone who suffers from SLE—but the record shows that she still experienced symptoms during that time. Moreover, less than three months later Gude had a "flare" and what Dr. Jacobson described as "worrisome" SLE symptoms: new joint pains in Gude's neck, feet, knees, and hands, as well as general fatigue, facial swelling, and "red" eyes with photophobia and pain. By March 9, 1988 Gude's eyes were better, but her pain remained. In sum, nothing in the record suggests that the symptoms described by Jacobson during his treatment of Gude are fabricated or inconsistent with the diagnosis of SLE.

This case is thus similar to *Fleshman v. Sullivan*, 933 F.2d 674 (8th Cir.1991), where the applicant had undergone a kidney transplant and claimed disabling pain. The ALJ discounted the applicant's allegations of pain because physician's notes stated that the claimant was "doing well." We held this to be improper, noting that although the claimant in *Fleshman* may have been doing well *for someone with a kidney transplant,* that fact neither compelled nor supported a finding that the applicant was not disabled where the uncontradicted medical evidence supported the applicant's claims of pain and confusion. *Id.* at 676. Likewise, Gude may be doing as well as can be expected given her case of SLE, but we find nothing in this record to contradict Dr. Jacobson's conclusion that Gude's symptoms exist and will impede her from performing full-time employment.

## 2. Subjective complaints of pain

Although the ALJ agreed that Gude's SLE involved some fatigue and joint stiffness, he disbelieved Gude's subjective claims of pain and discomfort because he found them inconsistent with the record as a whole. After examining the record, we conclude that the ALJ's decision on this point was not supported by substantial evidence.

At the outset, we note that Gude's complaints of pain and fatigue are entirely consistent with the general course of SLE. "Mild" SLE includes fever, arthritis, pleurisy, pericarditis, headaches, and rash, while "severe" SLE includes life-threatening diseases. As many as ninety percent of SLE patients complain of symptoms ranging from intermittent joint pains to acute polyarthritis, and general hair loss is frequent during active phases of the disease. The course of SLE is chronic and relapsing with long periods of remission and is totally unpredictable. *Merck Manual of Diagnosis and Therapy* 1275–76 (Robert Berkow, M.D. et al. eds) (15th ed. 1987) [hereinafter *Merck Manual*]. As noted above, Gude's SLE has been in remission from time to time and can be controlled by prednisone, but Gude's treating physician states that she can and does continue to suffer from symptoms such as pain and fatigue associated with the disease.

■ Still, the ALJ disbelieved Gude's subjective complaints, in part because Gude did not appear to be in overt discomfort and did not appear to have any swelling during the hearing. We note, however, that the hearing lasted only seventeen minutes. A claimant's ability to sit for seventeen minutes alone cannot constitute substantial evidence to support a finding that Gude's subjective complaints were not credible. *See Bishop v. Sullivan*, 900 F.2d 1259, 1263 (8th Cir.1990) (disbelief of subjective complaints cannot be based solely on ALJ's personal observations). Moreover, Gude never claimed her swelling was constant, and there is nothing in the record indicating that the ALJ was able to or trained to examine Gude's feet, knees, elbows, or other joints for swelling.

The ALJ also trivialized Gude's claim that sunlight causes her rashes and eye pain; he noted that the Washington University Eye Clinic found "no cause" for eye pain and photophobia she complained about in February 1988. This observation, however, mischaracterizes the evidence; the Eye Clinic stated that excess blood in her

eyes could be the cause of Gude's eye pain, and Dr. Jacobson noted swelling around Gude's eyes at the time she complained of the severe eye pain. Gude's complaints thus were corroborated by treating physicians and are consistent with her SLE diagnosis; photosensitivity occurs in forty percent of SLE patients. *Merck Manual, supra*, at 1275.

The ALJ also determined that Gude's testimony regarding her activity level was not credible because it was purportedly contradicted by two previous statements in her disability report. First, Gude's December 15, 1987 disability report stated that Gude could cook and clean "without any problems." Second, the report listed "skating" under recreational activities and hobbies. At the hearing, the ALJ asked Gude about her housework:

Q  Are you able to do any work around the house?

A  Not mostly. Not when I'm feeling bad, no sir.

. . . .

Q  ... You say you don't do much housework?

A  No, sir.

Q  Just too tired?

A  Some days, yes, sir.

Q  Huh?

A  Yes, sir. After some days.

Q  Some days?

A  Yes, sir.

Q  But in other words you'll try, huh?

A  I will try, and my son will help me a lot.

■ We do not see how these replies contradict Gude's statement about housework on the disability report. The disability report apparently was filled out by someone other than Gude, and it was completed before Gude's 1988 "flare" of new SLE symptoms. *Cf. Ludden v. Bowen*, 888 F.2d 1246, 1248 (8th Cir.1989) (earlier activities questionnaire revealed no inconsistencies other than evidence that claimant's condition had worsened since he first applied for benefits). Thus, even if Gude had the ability to do some housework in 1987 during one of her "good days," that is not necessarily inconsistent with her allegations of pain and disability at the time of the hearing. Moreover, we have held consistently that a claimant's ability to do limited housework does not compel a finding of no disability. *See, e.g., Bishop*, 900 F.2d at 1262–63; *Ludden*, 888 F.2d at 1248.

In addition, the ALJ noted that Gude was receiving minimum medications ("only Prednisone") to control her symptoms and saw her physician only once every three months. The treatment of both "mild" and "severe" SLE, however, contemplates the *minimum* dose of corticosteroids (such as prednisone) and other agents necessary to suppress tissue inflammation. "Heroic doses" are not recommended, and the lowest effective dose should be prescribed for the shortest possible time.[2] *Merck Manual, supra*, at 1277, 2504. We also reiterate that Gude saw her physician more frequently than every three months at the time she had her flare in 1988.

Finally, the ALJ disregarded Gude's subjective complaints because her past jobs were "low wage endeavors that provide no financial incentive to return to." This is an unacceptable reason to discredit Gude's subjective complaints of pain. It penalizes Gude for engaging in low-paying work, yet that is most likely the only kind of work that Gude's borderline intellectual functioning enabled her to perform. Moreover, Gude has no history of malingering. She worked at a variety of jobs until 1986 when she was hospitalized for SLE. Indeed, Gude left her last job not because she did not want to work as a babysitter, but because parents of the children she cared for complained that swelling from Gude's SLE interfered with Gude's work.

### Conclusion

The "burden is on the Secretary to show that this claimant is able to perform the requisite acts of sedentary work day in and

---

**2.** Large doses of corticosteroids such as prednisone can mask clinical symptoms and signs of major diseases, and can cause muscle wasting, edema, and congestive heart failure. *Merck Manual, supra*, at 2503–04.

day out in the competitive conditions of work in the real world." *O'Leary v. Schweiker*, 710 F.2d 1334, 1342 (8th Cir. 1983). Here, the Secretary failed to meet this burden; he ignored the treating physician's opinion, which was well supported by the medical evidence, and improperly discredited Gude's subjective complaints of pain and fatigue.

■ Where the Secretary erroneously concludes, as here, that allegations of pain were not credible and denies benefits based on the Medical–Vocational Guidelines, we ordinarily remand for further hearings, including the testimony of a vocational expert.[3] *Cline v. Sullivan*, 939 F.2d 560, 569 (8th Cir.1991). Because the record convincingly establishes disability, however, "further hearing would merely delay receipt of benefits" and "an immediate order granting benefits without remand is appropriate." *Id.* Gude plainly suffers from a chronic, relapsing disease that places significant limits on her ability to do work or even get to work: she cannot go out in sunlight and she cannot go out when the temperature is under thirty degrees or over eighty degrees. Her prognosis is unclear. Gude's borderline intelligence in combination with her SLE renders it extremely unlikely that she can engage in sedentary work on a day-in, day-out basis. Accordingly, the district court's judgment is reversed and the case is remanded with directions that Gude be awarded benefits from December 16, 1986.[4]

---

3. Because Gude demonstrated she could not return to her former jobs, the burden shifted to the Secretary to "prove that the claimant has the residual functional capacity to perform other kinds of work" and to "demonstrate that there are jobs available in the national economy that can realistically be performed by someone with the claimant's qualifications and capabilities." *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). Were we to remand this case, a vocational expert would need to consider Gude's subjective complaints of pain, her borderline intelligence, and her sensitivity to light, heat, and cold. *See Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir.1987) (pain); *Spencer v. Bow-*

*en*, 798 F.2d 275, 278 n. 2 (8th Cir.1986) (borderline intelligence a severe nonexertional impairment to be considered by a vocational expert); *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir.1982) (en banc) (environmental restrictions are nonexertional impairments to be considered by a vocational expert).

4. We may award retroactive disability benefits only for the twelve months prior to the filing of Gude's application. 42 U.S.C. § 423(b) (1988); *Van Horn v. Heckler*, 717 F.2d 1196, 1200 (8th Cir.1983).