# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1987
_____

Mike L. Winn

*Plaintiff - Appellant*

v.

Commissioner, Social Security Administration

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: February 15, 2018
Filed: July 6, 2018
_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Mike L. Winn applied for Social Security disability insurance benefits between June 12, 2007, the alleged disability onset date, and December 31, 2012, his "date last insured." See 20 C.F.R. §§ 404.130, 404.131, 404.315(a). During Winn's prior appeal from the denial of benefits after an administrative hearing, we granted the Commissioner's motion to remand for consideration of additional evidence from Winn's treating physician and reassessment of his residual functional capacity (RFC).

On remand, the Commissioner's Appeals Council consolidated a second application Winn filed in December 2012 and remanded the combined proceedings to an Administrative Law Judge (ALJ) to consider additional evidence, redetermine Winn's RFC, and solicit testimony from a vocational expert (VE). After a hearing at which Winn and a VE testified, a second ALJ denied Winn's application for benefits. Winn petitioned for judicial review. After thorough review, the district court[1] upheld the Commissioner's denial of disability benefits, concluding that the ALJ's decision is supported by substantial evidence on the administrative record as a whole. Winn appeals. We apply that same standard and affirm. See Van Vickle v. Astrue, 539 F.3d 825, 828 (8th Cir. 2008) (standard of review).

Applying the five-step process defined in 20 C.F.R. § 404.1520(a), the ALJ found that, during the period in question, Winn suffered from severe but non-listed impairments -- degenerative disc disease of the cervical spine, carpal tunnel syndrome, and neuropathy. After considering the entire record including additional evidence from Winn's treating physician, the ALJ found that his RFC as of the date last insured was --

> to perform light work as defined in 20 CFR 404.1567(b) except that he could lift and/or carry and push and/or pull up to 10 pounds occasionally and 5 pounds frequently; he could stand and walk up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday; he could n[ot] climb ladders, ropes or scaffolds; he could occasionally climb ramps and stairs; he could occasionally stoop, kneel, crouch and crawl; he could frequently reach, but could only occasionally reach overhead; he could frequently handle, finger and feel; and he needed to avoid hazards such as dangerous moving machinery or unprotected heights.

---

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

Based on this RFC, the ALJ found that Winn could not perform his past relevant work, which was operating heavy equipment at a Missouri rock quarry. However, based on the VE's testimony that someone with Winn's age, education, work experience, and RFC could perform jobs available in the regional and national economy at that time, such as bench assembler, laundry worker, and ticket seller, the ALJ found that Winn was not disabled. On appeal, Winn argues, as he did to the district court, (1) that the ALJ did not give the opinions of his treating physician, Dr. Gary LaMonda, sufficient weight; and (2) that the RFC found by the ALJ attributed greater hand functioning to Winn than the medical evidence supported.

**1. The Treating Physician Issue.** Dr. LaMonda, an internist, had treated Winn for many years when, in late 2005, Winn's complaints of neck and shoulder pain and hand numbness caused Dr. LaMonda to order an MRI of the cervical spine and to refer Winn to Dr. Donald Meyer, a pain management specialist. The MRI showed degenerative disc disease and spinal stenosis. Steroid injections improved Winn's pain, but by mid-2007 chronic neck pain led Dr. Meyer to refer Winn to Dr. Jeffrey Parker, a surgeon. Based on an MRI and a new myelogram, Dr. Parker diagnosed severe cervical stenosis and recommended that Winn not return to work. In a second appointment, Dr. Parker diagnosed carpal tunnel syndrome and referred Winn to Dr. John Havey, who performed carpal tunnel release procedures on each hand. Dr. Havey opined that Winn was doing well after the procedures but should remain off work for another month and not do "heavy gripping or lifting." Later that fall, after another MRI, Dr. Parker performed fusion surgery on Winn's cervical spine. Seven weeks after the surgery, Winn told Dr. Parker he was "doing fine" and had "no problems at all." In January 2008, Winn told Dr. Parker his neck pain was gradually improving but he doubted he could return to work as a heavy-equipment operator. Dr. Parker kept Winn off work and noted he should consider a different profession. Also in January 2008, Dr. Havey noted Winn was doing well after his carpal tunnel surgeries.

The record reflects that Winn received unemployment compensation benefits from the fourth quarter of 2007 through the second quarter of 2008. In April 2008, Winn told Dr. Parker he was experiencing neck soreness and hand numbness and was pursuing a workers' compensation claim. Dr. Parker noted mild limitation of cervical motion but "good grip strength in both hands." He advised Winn he could return to light work. The following month, Dr. Daniel Kitchens conducted an independent medical evaluation of Winn in connection with his workers' compensation claim. After reviewing Winn's extensive medical history, Dr. Kitchens opined that Winn could "work with light to medium-duty restrictions." In July, Winn again saw Dr. Meyer. Though Winn claimed no post-surgery improvement in pain and numbness, Dr. Meyer opined that Winn's symptoms were "relatively mild" and his pain "is not something that should be completely disabling."

Winn next saw Dr. LaMonda in August 2009. Winn said he felt "okay" but reported neck and shoulder pain. Neurodiagnostic testing showed some spinal radiculopathy and severe bilateral carpal tunnel syndrome. Dr. LaMonda referred Winn to Dr. Thomas Turnbaugh, an orthopedic surgeon, who performed additional carpal tunnel surgery on Winn's left wrist in December 2009. At a checkup the next month, Winn told Dr. LaMonda he felt well except for chronic headaches.

In June 2010, Winn saw Dr. LaMonda for "some paper work" regarding his disability application. In response to written interrogatories from Winn's attorney, Dr. LaMonda stated that Winn's hands are restricted from ten pound lifting and repetitive use; he has shoulder pain while standing for fifteen minutes and cannot sit for more than thirty minutes without having to lie down to stop muscle spasms and arm pain; his "neck will not tolerate sitting for more than 30 minutes"; his cervical stenosis precludes "repetitive stooping or standing for more than 30 minutes"; and lying down every two hours for thirty minutes will relieve pain and muscle spasms. In December 2010, after the first ALJ found Winn not disabled, Dr. LaMonda provided a telephonic sworn statement in which he elaborated on these opinions and

explained his role as internist in coordinating treatment by medical specialists such as Dr. Meyer, Dr. Parker, and Dr. Havey. Dr. LaMonda opined that, while the MRI after Winn's neck surgery showed there was no longer nerve blockage, "because it was a long-standing impingement on those nerves, he had had long-standing and permanent damage . . . to both the nerves going to the arms, the C5-6 nerve roots, and off the spinal cord."

Winn saw Dr. LaMonda again in November 2011 and February 2012. The district court agreed with the ALJ that Dr. LaMonda's notes are ambiguous as to the effectiveness of Winn's most recent carpal tunnel procedure. In February 2013, Winn saw Dr. Dennis Velez for a consultative examination. Dr. Velez observed that Winn demonstrated "normal range of motion" and "full sensation" during a motor examination and concluded he "does not have limitations for sitting, standing or walking." Dr. Velez opined that Winn "may have some manipulative limitations using the right hand side, but would not have any lifting or carrying limitations." In May 2014, Winn saw Dr. LaMonda, who reported that Winn continued to have severe carpal tunnel syndrome and chronic pain, despite surgeries.

The ALJ credited Dr. LaMonda's opinion that Winn could not lift more than ten pounds but gave limited weight to his other June and December 2010 opinions because they were not supported by objective medical evidence and were inconsistent with the opinions of Winn's specialists, with Dr. Velez's more recent findings, and with Winn's limited treatment history after July 2008. The ALJ gave "significant weight" to the opinions of Winn's specialists, Dr. Havey, Dr. Parker, and Dr. Meyer, and "partial weight" to those of Dr. Kitchens and Dr. Velez. The ALJ credited Dr. Velez's opinions that Winn may have manipulative limitations on his right side and does not have sitting, standing or walking limitations.

The district court concluded that substantial evidence supported the ALJ's decision to give Dr. LaMonda's opinions less weight than those of the specialists

because the specialists had an equal or greater role in treating Winn's ailments, objective medical evidence supported their post-surgery opinions, and Dr. LaMonda saw Winn relatively few times in the years following his back and carpal tunnel surgeries. The court also concluded that Dr. Velez's opinion -- Winn may have manipulative limitations on his right hand -- was consistent with the ALJ's finding that Winn could "frequently" handle, finger, and feel and did not mandate a limitation that Winn could only "occasionally" do those tasks.

On appeal, Winn argues the ALJ did not accord Dr. LaMonda's opinions about Winn's functional limitations sufficient weight and failed to reevaluate the evidence in light of Dr. LaMonda's December 2010 statement, as the Appeals Council instructed in remanding. Winn emphasizes that Dr. LaMonda treated Winn for over twenty years and coordinated Winn's treatment with various specialists. To the extent Dr. LaMonda's 2010 opinions were inconsistent with Winn's specialists' opinions in 2007 and 2008, Winn notes the specialists saw Winn far fewer times than Dr. LaMonda and argues that their opinions, even if valid when given, "cannot be dispositive of [Winn's] condition years later."

A treating physician's opinion will be given controlling weight "if, and only if, it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" Johnson v. Astrue, 628 F.3d 991, 994 (8th Cir. 2011); see 20 C.F.R. § 404.1527(c)(2). Here, Dr. LaMonda and at least three specialists, Drs. Meyer, Parker, and Havey, initially agreed that Winn suffered from carpal tunnel and cervical spine nerve impairments that caused him significant pain and left him unable to continue operating heavy equipment from mid-2007 well into 2008. When more conservative treatments did not improve these conditions, Dr. Havey and Dr. Parker performed carpal tunnel and cervical spine fusion surgeries and kept Winn out of work while he recovered. The surgeons then opined that the surgeries went well.

In early to mid-2008, based on test results, Dr. Havey noted the post-surgery carpal tunnel condition would not preclude Winn's return to work; Dr. Parker opined that Winn could engage in light work; Dr. Kitchens opined that Winn could "work with light to medium-duty restrictions"; and Dr. Meyer opined that Winn's pain "is not something that should be completely disabling." There was then a long gap in treatment until late 2009, when Winn reported pain and underwent another carpal tunnel surgical procedure. In January 2010, Winn told Dr. LaMonda he was experiencing no symptoms other than chronic headaches.

The next medical evidence is the opinions set forth in Dr. LaMonda's June 2010 interrogatory answers. In his December 2010 explanatory statement, Dr. LaMonda opined that, even if the post-surgery MRIs showed physical improvement, the surgeries failed because Winn's permanent nerve damage meant that his pain and physical limitations would return without the work-precluding restrictions Dr. LaMonda considered necessary. The problem is, no post-surgery objective medical evidence supported Dr. LaMonda's assumption that Winn had suffered permanent, disabling nerve damage, despite the specialists' medically supported contrary opinions. Therefore, on this record, the ALJ did not err in discounting Dr. LaMonda's opinions as "not supported by objective medical evidence in the administrative record." Gieseke v. Colvin, 770 F.3d 1186, 1188 (8th Cir. 2014). As in Johnson, 628 F.3d at 995, the physicians who treated Winn had differing opinions regarding the extent to which his impairments were permanently disabling. "It is the ALJ's task to resolve conflicts in the evidence and issues of credibility." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006). As long as substantial evidence supports the ALJ's decision, we may not reverse because substantial evidence also "would have supported a contrary outcome, or because we would have decided the case differently." Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quotation omitted).

**2. The Hand Functioning Issue.** Winn argues the RFC finding that he could "frequently handle, finger and feel" failed to reflect Dr. Velez's opinion, which the ALJ credited, that Winn may have manipulative limitations on his right hand. When used in an RFC, the limitation "frequently" means that the activity or condition occurs between one-third and two-thirds of an eight-hour workday. See SSA Program Operations Manual System, DI 25001.001. Winn argues the ALJ should have found that he could only "occasionally" handle, finger, and feel, which means the activity occurs no more than one-third of the workday. Id. The VE testified that, if the "occasionally" limitation applied, Winn could not perform the available jobs she identified but would be able to perform another unskilled light job, counter clerk.

The district court rejected Winn's contention because the VE identified another job Winn could perform if limited to occasional handling, fingering, and feeling, and because "[n]othing compels the conclusion that the limitation to frequent handling, fingering and feeling (which is less than constant) is not sufficient to encompass Dr. Velez's opinion." We agree. As Winn has never sought unskilled light work, there is nothing in the record suggesting that his impairments require that he be limited to occasional rather than frequent handling. Winn argues that Dr. LaMonda's discounted opinion made "very clear that [Winn] would have significant problems with his hands." But Dr. LaMonda opined that Winn could not perform jobs that require occasional as well as frequent handling and fingering. The ALJ was not required to accept any physician's opinion regarding this element of Winn's RFC. "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox v. Astrue, 495 F.3d 614, 619-20 (8th Cir. 2007); see 20 C.F.R. § 404.1527(d)(2).

The judgment of the district court is affirmed.

_____