# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1323
_____

Jennie Adkins

*Plaintiff - Appellant*

v.

Commissioner, Social Security Administration

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro
_____

Submitted: September 27, 2018
Filed: December 19, 2018
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

LOKEN, Circuit Judge.

Jennie Adkins left her job as a hospice volunteer coordinator in September 2013, when she was 54 years old. She applied for Social Security disability benefits in March 2015, claiming she had been disabled since September 2013. After her initial application was denied, Adkins requested and was granted an administrative hearing on October 3, 2016. In support of her claim, Adkins submitted voluminous medical records. Adkins and a vocational expert testified at the hearing.

In a lengthy decision, the administrative law judge ("ALJ") conducted the five-step analysis prescribed in 20 C.F.R. § 404.1520(a)(4) and made the following findings: Adkins has severe impairments -- degenerative disc disease, spondylosis, arthritis, chronic obstructive pulmonary disease (COPD)/asthma, obesity, and type II diabetes -- but does not have a listed impairment. She has the residual functional capacity (RFC) to perform sedentary work, except she can only occasionally stoop, kneel, crouch, bend, crawl, and balance, and she cannot have excessive exposure to dust, smoke, fumes, and other pulmonary irritants. Adkins has reached the advanced age disability category and is unable to perform her past relevant work, but she has acquired work skills from her past relevant work. Consistent with the vocational expert's testimony, Adkins has the RFC to perform other sedentary jobs such as tube room cashier and check cashier and therefore is not disabled.

The Commissioner's Appeals Council denied Adkins's request for administrative review of the ALJ's decision. Adkins then commenced this action for judicial review of the Commissioner's adverse ruling, arguing the ALJ's decision was not supported by substantial evidence in the administrative record as a whole. The district court[1] disagreed, concluding after review of the entire record, "[t]here is ample evidence on the record as a whole that a reasonable mind might accept as adequate to support the conclusion of the ALJ" (quotation omitted). Adkins appeals, primarily arguing, as she did to the district court, that the ALJ did not give adequate weight to the opinion of her treating physician, Dr. Samantha Hatfield. Applying the same substantial evidence standard, we affirm.

After an October 2012 car accident, Adkins experienced "significant" neck and back pain, though a post-accident spinal X-ray showed "no signs of significant deformity or fracture." In January 2013, Dr. Kathryn McCarthy, an orthopaedic

---

[1]The Honorable Joe J. Volpe, United States Magistrate Judge for the Eastern District of Arkansas, who was designated to decide the case on the merits with the consent of the parties pursuant to 28 U.S.C. § 636©.

surgeon, recommended physical therapy and pain medication. After Adkins reported her pain "much improved" later in January and again in March, Dr. McCarthy noted that Adkins was "able to do all her activities of daily living including work," "has reached her maximal medical improvement at this point and has no disability," and could "return to work full duty" with no restrictions. Adkins left her job in September of that year.

In February 2014, Adkins reported back pain since the car accident to Dr. Hatfield, who ordered a lumbar MRI scan. The scan showed only mild degenerative changes. In July 2014, Dr. Hatfield referred Adkins to a pain specialist, Dr. Jeffrey Hall, who began treating Adkins with pain medication and a series of injections. In August 2015, Adkins told Dr. Hall that these injections had lessened her back pain. In September, she reported that her chronic pain was "stable" and later reported that her last treatment had given her more than 50% relief. In October 2015, when Adkins reported that Dr. Hall would not see her because she missed too many appointments, Dr. Hatfield referred Adkins to another pain specialist, Dr. Calin Savu.

In December 2015, Adkins reported "constant" lower back pain to APRN Amber Sloan in Dr. Savu's office. Sloan recommended diagnostic medial branch blocks followed by radiofrequency neurolysis to provide "consistent and persistent pain relief" and return Adkins to a "high level of functionality." Dr. Savu performed diagnostic medial branch blocks on Adkins's right side in January, February, and March 2016, followed by radiofrequency neurotomy in April. When this provided Adkins "significant relief," Dr. Savu repeated the process on her left side, ending with a radiofrequency neurotomy in July. There are no medical records from any pain specialist after July 2016. In September, a gastroenterologist diagnosing an unrelated liver issue observed that Adkins was in "no acute distress," had a "normal gait," and exhibited "normal movements of all extremities."

The medical records regarding Adkins's COPD/asthma impairment are less extensive. In April 2015, she was hospitalized for acute asthma exacerbation and other issues; her breathing had improved when she was discharged several days later, and in May and July her lungs were clear. In November 2015, a pulmonary specialist tested Adkins's FVC/FEV1 levels, mid-flows, lung volume, and carbon monoxide diffusing capacity. The specialist found that all were at "normal" levels and that Adkins's breathing sounded "normal." An X-ray confirmed her lungs were "clear."

On September 13, 2016, three weeks before the ALJ's hearing, Adkins brought Dr. Hatfield a two-page Medical Source Statement (MSS). Dr. Hatfield asked Adkins questions and completed the MSS based on Adkins's answers. By checking boxes on the pre-printed form, Hatfield opined that, because of chronic congestion, dypsnea, and sciatica, Adkins could only lift a maximum of ten pounds and less than ten pounds frequently; could only stand and walk less than two hours during an eight-hour day and sit about two hours; would need frequent rest periods and longer than normal breaks at the workplace; was unable to reach in all directions; could not manipulate objects with her hands and fingers for more than one-third of the workday; must avoid all exposure to extreme heat and moderate exposure to high humidity, dust, perfume, chemicals, and sunlight; and would be absent from work because of her impairments more than three days per month. Dr. Hatfield wrote that her opinion covered a time period from "2013 to current."

In the ruling Adkins challenges on appeal, the ALJ reviewed Dr. Hatfield's report and gave it "little weight." The ALJ found that "the extent of the limitations [noted in the MSS] are not consistent with the medical evidence," in particular, the September 2016 evidence that Adkins "was in no acute distress, had a normal gait, no joint swelling, normal muscle strength, and normal sensory function," and the November 2015 evidence that Adkins "had normal breath sounds, no wheezing, and normal FVC and FEV1 levels."

Though a treating physician's medically supported opinion is entitled to "special weight," the ALJ may discount a treating physician's opinion when "other medical assessments are supported by better or more thorough medical evidence." Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009) (citation omitted); Turpin v. Colvin, 750 F.3d 989, 991, 993-94 (8th Cir. 2014) (treating physician's opinion discounted because contrary to medical records showing back pain improved after treatment). Here, after careful review of the administrative record, the district court concluded that "the ALJ had fair reasons to discount Dr. Hatfield's conclusions. . . . [T]he [treatment] records do not support limitation to the degree reported by Dr. Hatfield." We agree.

The ALJ noted significant inconsistencies between Dr. Hatfield's opinions as recorded on the MSS and the earlier medical evidence in the record. We have often noted that the MSS form "consists of a series of check marks assessing residual functional capacity, a determination the ALJ must make, which are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record." Johnson v. Astrue, 628 F.3d 991, 994 (8th Cir. 2011) (quotation omitted); see Thomas v. Berryill, 881 F.3d 672, 675 (8th Cir. 2018); Toland v. Colvin, 761 F.3d 931, 937 (8th Cir. 2014); Teague v. Astrue, 638 F.3d 611, 615-16 (8th Cir. 2011). In addition, Dr. Hatfield checked boxes opining that Adkins was unable to reach in all directions, could not manipulate objects with her hands and fingers for more than one-third of the workday, and must avoid all exposure to extreme heat, limitations for which we find no supporting medical evidence in the record. The ALJ may discount "a treating physician's [MSS] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (quotation omitted).

For these reasons, like the district court we conclude that substantial evidence supports the ALJ's residual functional capacity finding and his decision to give little

weight to Dr. Hatfield's eleventh hour MSS. Without question, the medical records and Ms. Adkins's hearing testimony establish that she has suffered from, and been frequently treated for, chronic back pain. But the question is whether that pain and her other severe impairments were disabling during the time period at issue. As the district court correctly observed, it is not the function of a reviewing court "to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ."

Adkins argues we should remand for a proper evaluation of her claim because the ALJ failed to consider her long work history in assessing credibility. However, the ALJ specifically stated that he considered "all the evidence presented related to the claimant's prior work history." An ALJ need not explicitly discuss each relevant factor. See, e.g., Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

The judgment of the district court is affirmed.

_____