# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-1850

———————————————

Jonathon A. Swink

*Plaintiff - Appellant*

v.

Andrew M. Saul,[1] Commissioner, Social Security Administration

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

————————

Submitted: April 19, 2019
Filed: July 29, 2019

————————

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

————————

MELLOY, Circuit Judge.

———————————————

[1]Andrew M. Saul has been appointed to serve as Commissioner of the Social Security Administration and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

Jonathon Swink appeals the district court's[2] judgment upholding the Social Security Administration ("SSA") Commissioner's decision to deny Swink disability insurance benefits. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Swink is a 41-year-old man from Charleston, Arkansas. Since at least 2012, various medical professionals have treated him for a seizure disorder, anxiety, and back pain. In 2013, Swink underwent back surgery to remedy a herniated disc in his lumbar spine. He has not worked since the surgery.

On February 21, 2014, Swink filed an application for disability insurance benefits under the Social Security Act (the "Act"). See 42 U.S.C. § 423. He alleged that his disability began on October 28, 2013. After the SSA denied his application and a subsequent request to reconsider, Swink requested a hearing on the matter before an administrative law judge ("ALJ"). Swink's request was granted, and a hearing was ultimately held on March 21, 2016.

At the hearing, the ALJ heard testimony from Swink and a vocational expert. Swink testified that his back pain keeps him from working, but he has some good days on which he is able to do chores around his house and on rental properties he owns. He said that he has not experienced a generalized seizure in approximately three years due to medication. He explained that he frequently has "spells," which he characterizes as small seizures where his eyes "float" and he "zone[s] out" and slurs his speech or stutters. He stated that his anxiety is heightened because of his medical conditions. The vocational expert testified that there are over 1.2 million jobs in the national economy for a hypothetical person with Swink's limitations—a

[2]The Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

person who must avoid all hazards, can only perform light, unskilled work, and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.

The ALJ allowed Swink to enter several medical records into evidence. The records included reports from Swink's neurologists regarding his seizure disorder, reports from a sports medicine clinic and Mercy Hospital Fort Smith regarding his back issues, and reports from two nurse practitioners regarding his post-surgery back and general-health treatment. The records showed that during the relevant period, Swink's generalized seizures and anxiety were stable with medications. They also showed that his back condition had improved with surgery and he was clear to gradually increase his activity. According to the records, Swink had normal reflexes, mental status, muscle bulk, strength, and tone. His gait was normal. He had "normal movement of all extremities," though his lower back was tender.

The ALJ also considered several medical opinions. These included a physical capacity assessment from Swink's most recent health-care provider, a nurse practitioner named Jonathan Broniste. Disability-determination assessments the SSA had prepared through medical and psychological consultants were also included. Broniste opined that Swink had several physical limitations that would affect his ability to work—namely, Swink could only lift and carry up to 50 pounds occasionally and 10 pounds frequently; he could only sit for two hours total in an eight-hour workday and for fifteen minutes at a time; he could only be on his feet for a total of five hours in an eight-hour workday; he would need to avoid exposure to unprotected heights, moving machinery, and marked temperature changes; and he could only occasionally bend, squat, crawl, climb, stoop, crouch, or kneel. Broniste also said that Swink would sometimes need to take unscheduled breaks during a work shift and that Swink would likely miss more than four work days per month. The consultants who prepared the disability-determination assessments concluded that Swink could perform light work with occasional climbing, stooping, kneeling, crouching, balancing, and crawling. They also said that Swink should avoid exposure to hazards and that any limitations arising from his mental impairments were no more than "mild."

The ALJ took the case under advisement, allowing Swink to supplement the record with materials he received from a recent visit with his neurologist. The supplemental materials confirmed that Swink's generalized seizures and anxiety disorder were stable with medication and that he had a normal gait. They also revealed that Swink's neurologist did not believe Swink's spells were small seizures. According to the neurologist, the spells were possibly the effect of an undiagnosed attention deficit disorder ("ADD"). The neurologist recommended testing for ADD and increased the dose of Swink's seizure medication, apparently at Swink's request and out of caution.

The ALJ concluded that Swink was not under a disability as that term is defined in the Act and denied his application. Specifically, the ALJ found that Swink had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he [could only] occasionally stoop, kneel, climb ramps and stairs, balance, crouch, and crawl." The ALJ further found that Swink needed to "avoid all exposure to hazards" and that he was "limited to unskilled work."

Swink requested that the SSA Appeals Council review the ALJ's decision. The SSA Appeals Council denied the request, rendering the ALJ's decision the final decision of the Social Security Commissioner. Swink appealed to the district court, which affirmed. Swink now appeals to this Court.

## II. Discussion

We review de novo the district court's decision affirming the denial of social security benefits. Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). We affirm "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." Id. (citation omitted). Evidence is substantial when "a reasonable mind would find it adequate to support the Commissioner's conclusion." Ash v. Colvin, 812 F.3d 686, 689 (8th Cir. 2016) (citation omitted). If, after reviewing the record, it is "possible to draw two inconsistent positions . . . and

one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." Id. at 689–90 (citation omitted).

The Act defines the term "disability" to mean, in part, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations implementing the Act set forth a five-step, sequential process for determining whether a claimant is under a disability. See 20 C.F.R. § 404.1520. At issue in this case is whether the ALJ erroneously determined Swink's residual functional capacity ("RFC"), a process essential to properly completing steps four and five. See id. § 404.1520(a)(4)(iv)–(v), (e).

A claimant's RFC is "the most [he] can still do despite [his] limitations." Id. § 404.1545(a)(1). To determine a claimant's RFC, an ALJ must review "all the relevant medical and other evidence in [the claimant's] case record." Id. § 404.1520(e); see also id. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). Determining a claimant's RFC is a medical question that must be based on "some medical evidence." Julin v. Colvin, 826 F.3d 1082, 1089 (8th Cir. 2016). A claimant bears the burden of establishing his RFC. Despain v. Berryhill, 926 F.3d 1024, 1027 (8th Cir. 2019).

We hold that substantial evidence supports the ALJ's finding that Swink had the RFC to perform light, unskilled work with several limitations. The record reveals that Swink has had no generalized seizures during the relevant period and that his mental impairments have been stable with medication. Moreover, following Swink's back surgery and nearly a month before Swink applied for disability insurance benefits, Swink's back surgeon said Swink could safely lift twenty-five pounds and return to general activity over the next two to three months. Swink's post-operation care providers reached similar conclusions, and none of them imposed restrictions on Swink's work-related activities. We therefore must respect the ALJ's RFC finding

because "a reasonable mind would find [the evidence] adequate to support" it. Ash, 812 F.3d at 689.

Swink argues that the ALJ erred in determining his RFC because the ALJ did not "include, or at least comment on and assign weight to," certain limitations—namely, that he would frequently miss work days, take irregular breaks, and be off task. Swink is correct that some evidence in the record—namely, Broniste's physical capacity assessment—supports his claims that his impairments would limit him in these ways. "The mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner," however, "does not allow this Court to reverse the decision of the ALJ." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). Thus, even though we agree with Swink to some extent,[3] we must affirm the ALJ's RFC finding.

Swink argues that the ALJ should have ordered a consultative examination to determine whether his impairments would result in the limitations just described. We disagree. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995) (alteration in original) (citation omitted). For the reasons stated above, we hold that the evidence in the record provided a sufficient basis for the ALJ's decision. The ALJ was not required to order a consultative examination.

---

[3]We note that the ALJ *did* comment on the limitations Swink says should have been included in his RFC. The ALJ stated that "substantial objective medical evidence showing stable physical and diagnostic findings" did not support Broniste's "opinion regarding [Swink's] likelihood of absences, the need for unscheduled breaks, nor significantly reduced sitting, standing, and walking abilities." We see nothing inappropriate about this statement. See Winn v. Comm'r, Soc. Sec. Admin., 894 F.3d 982, 986 (8th Cir. 2018) ("A treating physician's opinion will be given controlling weight if, and only if, it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." (internal quotation marks and citation omitted)).

Finally, Swink argues that the ALJ improperly assessed his credibility. He argues that the ALJ erroneously discredited his subjective claims of pain. We disagree.

> When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. . . . [A]n ALJ need not explicitly discuss each factor, and we will defer to credibility determinations that are supported by good reasons and substantial evidence. . . . An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony.

Schwandt v. Berryhill, 926 F.3d 1004, 1012 (8th Cir. 2019) (internal quotation marks and citations omitted).

Here, the ALJ largely credited Swink's pain-related assertions. Thus, the ALJ restricted him to light, unskilled work with occasional stooping, kneeling, climbing ramps and stairs, balancing, crouching, and crawling and no exposure to hazards. However, the ALJ found that Swink's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." The ALJ explained that Swink's medical records indicated that Swink suffered from a "decreased range of motion, pain, and tenderness." But, the ALJ said the records also showed that Swink had "full strength, intact neurological functions, narrow gait, and the ability to perform tandem gait without difficulty." Moreover, the ALJ noted that Swink's post-operation X-rays "only showed mild disc space narrowing and spur formation." Finally, the ALJ stated that while Swink alleged "that he experiences residual back pain that interferes with his ability to sit, stand, and walk for an extended duration,

he testified that he is still able to perform some household repairs on the rental properties that he owns, drive, shop, and perform light household chores."

We hold that the ALJ's credibility determination is supported by substantial evidence on the record as a whole.  Swink clearly suffers from back pain, but nothing in the record convinces us that we should disturb the ALJ's credibility finding.  See Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." (citation omitted)).

### III.  Conclusion

Accordingly, we affirm the judgment of the district court.

_____